819 So.2d 887 (2002)
Samuel BECKER, Appellant,
v.
RE/MAX HORIZONS REALTY, INC., Appellee.
No. 1D01-3545.
District Court of Appeal of Florida, First District.
June 12, 2002.
*888 Charles P. Hoskin, Pensacola, for Appellant.
Christopher R. Johnson of Whibbs, Whibbs & Johnson, P.A., Pensacola, for Appellee.
VAN NORTWICK, J.
Samuel Becker appeals a summary final default judgment entered in the action brought by Re/Max Horizons Realty, Inc. (Re/Max), for sums due under a promissory note and the trial court's order denying his motion to vacate and set aside the clerk's default entered against him. Becker raises three issues, only two of which must be addressed. Finding that the total amount of the unpaid principal of the note combined with the late fees to which Re/ Max was entitled under the note satisfies the amount in controversy requirement for circuit court jurisdiction, we affirm the circuit court's exercise of subject matter jurisdiction. We reverse the summary judgment, however, because the trial court erred in failing to set aside the clerk's default when the record reflects that Becker served a paper before the default was entered.

Factual and Procedural Background
Re/Max filed suit against Becker on a promissory note executed by him. In the promissory note, Becker promised to pay:
the principal sum of FOURTEEN THOUSAND NINE HUNDRED FIFTY AND NO/100 DOLLARS ($14,950.00) together with interest at the rate of Eight (8%) percent per annum, which shall be due and payable in 103 equal and consecutive monthly payments consisting of principal and interest in the amount of $200.00 commencing March 15, 2000, and continuing on the 15th day of each consecutive month thereafter until the final payment of principal and interest in the amount of $163.63 shall become due and payable on the 15th day of October, 2008.
Any payment not made within ten (10) days of the date due shall be subject to a late fee of 5%....
[I]n case this Note is collected by law or through an attorney-at-law, or under advice therefrom, the Maker agrees to pay *889 all cost of collection, including maximum attorneys' fees then allowed by law.
Becker was personally served on February 28, 2001 and was required to file a responsive pleading by March 20, 2001. On March 26, 2001, Re/Max filed a motion for default. Also on March 26, the attorney for Becker served a motion for enlargement of time requesting an extension until March 30, 2001, within which to file an answer or otherwise defend. The attorney's certificate of service in the motion indicates that a copy was furnished to counsel for Re/Max on March 26, 2001. The motion was filed with the court on March 27, 2001. That same day, the clerk entered a default against Becker for failure to serve or file any papers as required by law. Becker's subsequent motion to vacate and set aside the default on the grounds that his motion for enlargement of time was served prior to the clerk's default was denied. The summary final default judgment ordered Becker to pay Re/Max:
[T]he sum of $14,950.00; with interest of 8%, per annum, or $1,672.80; a late fee of $747.50; attorneys' fees of $4,500.00; and costs in the sum of $324.90; making a total of $22,195.20 with interest at the legal rate from the date of this judgment for which let execution issue.

Jurisdictional Amount
Becker contends that the trial court did not possess subject matter jurisdiction because the face amount of the note was $14,950, and, therefore, the amount in controversy did not exceed the $15,000 jurisdictional amount required for circuit court jurisdiction. Section 26.012(2), Florida Statutes (1999), provides, in pertinent part, that circuit courts have jurisdiction in civil cases in all actions at law not cognizable by the county courts. Section 34.01(1)(c)4., Florida Statutes, states, in pertinent part, that county courts have jurisdiction over civil actions in which the amount in controversy "does not exceed the sum of $15,000 exclusive of interest, costs, and attorney's fees." Thus, Becker argues that circuit court jurisdiction in this case could not be created by adding to the face amount of the note a claim for interest, costs, or attorney's fees.
Becker's argument, however, overlooks the provision in the promissory note entitling Re/Max to a 5% late fee immediately upon Becker's failure to pay each installment within 10 days of each due date. These late fees constituted an integral part of the damages due Re/Max under the note and are not excluded under the provisions of section 34.01(1)(c)4. for purposes of determining the jurisdictional amount in controversy.
The test for determining jurisdiction is the amount claimed and put into controversy in good faith. PTS of Gainesville, Inc. v. Olivetti Corp. of Am., 334 So.2d 324, 325 (Fla. 1st DCA 1976). The complaint filed by Re/Max put into controversy the amounts due under the promissory note. Ultimately, the court awarded the principal amount of $14,950 and late fees of $747.50, which together exceed the $15,000 jurisdictional limit of county court, making jurisdiction appropriate in the circuit court. Although the amount recovered is not dispositive of the jurisdictional amount, see Dade County v. Lambert, 334 So.2d 844 (Fla. 3d DCA 1976), it constitutes evidence of Re/Max's good faith claim for the jurisdictional amount.
Because of our holding here, we do not address whether interest due under a note can be included in determining the amount in controversy. We note that federal courts, interpreting language in 28 U.S.C. § 1332 (1999)("The district courts shall have original jurisdiction of all civil matters where the matter in controversy exceeds the sum or value of $75,000, exclusive *890 of interest and costs ....") similar to section 34.01(1)(c)4., have held that the amount of interest due under a note, prior to maturity, is included as a part of the amount in controversy for jurisdictional purposes. See Bailey Employment Sys., Inc. v. Hahn, 655 F.2d 473 (2d Cir.1981); see generally, 14B Wright & Miller, Federal Practice and Procedure § 3712 (3d ed.1998).

Vacating the Default
Becker argues that it was error for the trial court not to vacate the default when his motion requesting a short extension to file the answer was served before the clerk's default was entered. We agree. See Nasrallah v. Smith, 538 So.2d 554 (Fla. 5th DCA 1989). The clerk may enter a default under rule 1.500(a), Florida Rules of Civil Procedure only if the defendant has failed to file or serve any paper in the action. For purposes of construing the right to enter a default under rule 1.500(a), the term "paper" is construed liberally and includes any written communication that informs the plaintiff of the defendant's intent to contest the claim. See generally, Philip J. Padovano, Florida Civil Practice, § 9.2 (2001 ed.). Thus, the clerk's default was void ab initio and the trial court was required to vacate the default. See DeRosa v. Pugliese, 782 So.2d 1011 (Fla. 4th DCA 2001).
AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.
ERVIN AND BARFIELD, JJ., CONCUR.